**Thomas A. SHEEHAN, Plaintiff,**

v.

**Andrew P. MILLER and Colonel H. W. Burgess, Superintendent, Department of State Police, Richmond, Virginia, Defendants.**

**Civ. A. No. 74–80.**

United States District Court,
W. D. Virginia,
Roanoke Division.

Aug. 14, 1974.

Thomas A. Sheehan, pro se.

Mylander, Atwater, Carney & Stone, Baltimore, Md., for plaintiff.

James E. Kulp, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION AND FINAL ORDER

TURK, Chief Judge.

Thomas Sheehan, an attorney at law, brings this suit on his own behalf against the Attorney General of Virginia and the Superintendent of the Virginia State Police. From plaintiff's pleadings and attached exhibits, it appears that he was charged with speeding in Madison County, Virginia for which he was summoned to appear in the Madison County General District Court on May 14, 1974. He alleges that he was stopped by an unmarked police car in the nighttime under circumstances which caused him "great fright and near panic" because of his inability to determine that it was in fact a police officer seeking to stop him. At plaintiff's request, his trial in the Madison County General District Court was postponed until July 2, 1974; but plaintiff has indicated in a motion to this court seeking to stay those proceedings that he could not appear for his state trial due to his fear of "violent unlawful force by the Virginia State Police"—referring to their continued use of unmarked police cars. Plaintiff's request that this court enjoin the defendants from issuing an arrest warrant because of his anticipated failure to appear was denied. Plaintiff has also asked this court to hold hearings on this suit in Washington, D.C. because of his allegedly justifiable refusal to enter Virginia.

Plaintiff does not cite a specific jurisdictional statute upon which he relies although he does allege that there is diversity of citizenship; he also asserts that there is a federal question in that he has been denied his right to interstate travel and thereby due process. In addition, he states that the case arises under the commerce clause of the Constitution (U.S.Const. Art. I, § 8) and that the right in controversy and potential damage to him exceed $10,000. The court assumes that plaintiff is relying on both 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1332 (diversity of citizenship) as a basis for jurisdiction.

The defendants have moved to dismiss the complaint on the following grounds: (1) Lack of subject matter jurisdiction; (2) failure to state a claim upon which relief can be granted; and (3) the inappropriateness of federal court interference in pending state criminal proceedings.

The court is of the opinion that the defendants' jurisdictional challenge is well taken. Under either 28 U.S.C. §§ 1331 or 1332 the amount in controversy must exceed $10,000. Plaintiff asks only for injunctive relief against the practice of using unmarked police cars at night. He argues that the continuation of this practice threatens him with severe injury by deterring him from entering Virginia and answering the speeding charge. He further states that if he did re-enter Virginia, he would not obey the instructions of a police officer not readily identifiable as such. Thus, in either case he sees himself as being subject to arrest and other severe consequence because of his disagreement with the defendants' policy of using unmarked police cars. The potential injury plaintiff foresees to himself because of his reaction to this practice is highly speculative and does not put in controversy an amount in excess of $10,000.

But even assuming *arguendo* that the plaintiff could satisfy the $10,000 amount in controversy or that he had relied on 28 U.S.C. § 1343 requiring no jurisdictional amount, the court would nevertheless feel compelled to dismiss the suit. This is so because the court fails to perceive a substantial federal issue in plaintiff's allegations. It may be true, as plaintiff alleges, that the subjective effect of Virginia's practice of using unmarked cars will deter him from traveling to Virginia, but so might any of a number of other factors peculiar to Virginia or some other state. Whatever the limits of the constitutional right to interstate travel, see *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974), the court is confident that the present case does not

involve a deprivation of this right. It is clear that neither the purpose nor the effect of using unmarked cars can be seriously said to inhibit the right of interstate migration. This case involves nothing more than plaintiff's disagreement with one of the methods used by the state to enforce its motor vehicle laws. But there is no contention that this use of unmarked cars is applied in a discriminatory manner—for example, only against those from out of state. Nor is there any contention that the defendants' use of unmarked police cars is designed to create fear and panic in motorists using Virginia highways. Read liberally, plaintiff's allegations could conceivably state a nominal tort claim against the individual officer, but the court has no doubt that such a claim is not of constitutional magnitude and would not involve an amount in controversy in excess of $10,000.

Accordingly, the defendants' motion to dismiss is hereby granted and plaintiff's complaint is dismissed with prejudice.